IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **MIKE DAVIS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 1:20-cv-00353** |
| | § | **Jury Trial** |
| **AUSTIN INDEPENDENT SCHOOL** | § | |
| **DISTRICT** | § | |
| **Defendants** | § | |

## PLAINTIFF'S FIRST ORIGINAL COMPLAINT

**NOW COMES** Mike Davis, Individually ("the Plaintiff") file this his *First Original Complaint* alleging that the Austin Independent School District (hereinafter referred to as "Austin ISD", "AISD" or the "School District") violated his parental rights, all as more specifically pled herein. Plaintiff reserves the right to replead if new claims and issues arise upon further development of the facts, as permitted by law. In support thereof Plaintiff would respectfully show this tribunal the following:

## PROLOGUE

1.  Some students are banned from a school for bringing in illegal substances or weapons on campus and creating a disturbance.  Mr. Davis was banned from the school grounds not for doing anything illegal but rather for bringing his voice to school and using it to advocate on his daughter's behalf.  He too created a disturbance but it is of a type protected by the United States Constitution.

## I. BRIEF INTRODUCTION TO THE CASE

2.  The Texas Legislature has written into the Texas Education Code, at Chapter 26, the very strong public policy, that a parent is an equal partner in the education of their children.  That

being said when Mike Davis, Plaintiff herein attempted to effectuate those rights he was scorned.  In fact, the more he attempted to help his daughter (AMD) at school, and the more he complained to staff about the problems he observed and experienced, the more he became an object of scorn and victim of retaliation.  Sadly, the relationship and communications soured so badly, that one day Mr. Davis received a letter, termed a *Conditional Ban*, that forbid him from going to events at his daughter's school or set foot on any AISD campus.

3.      The Texas Education Code §37.105 does permit a School District to issue a *Trespass Warning* to a parent, forbidding a parent from entering their child's school, but before it may do so, the District must provide the parent who is the object of concern, a verbal warning.  Specifically, the parent must receive specific information about what the offending behavior consists of, and that if the (purported) offensive behaviors persists, the person may be refused entry to the school or AISD events.  Moreover, the District must keep a written record of each verbal warning.  Additionally, School Board policy requires that a parent who receives such a letter be given information about the appeal process, with copies of all relevant policies attached.

4.      Mr. Davis never got the required verbal warning but directly received what the District called a *Conditional Ban Letter.*  In fact, he was blind-sided by the letter.  Moreover, the letter did not provide the required information about the appeal process.  He did not receive information about relevant School Board policies and procedures.  The letter stated he was banned from his daughter's campus and school events for two years.  Importantly, there is nothing in the Texas Education Code or the Texas Education Commissioners' Rules in the Texas Administrative Code, that gives a School District the right to have a conditional ban

at all, let alone for two years.

5.      Based upon the failures noted above, and more fully addressed below, Mike Davis files this *Original Complaint*, alleging he is a victim of retaliation for complaining on his daughter's behalf about discrimination based upon sex or gender, as contemplated by Title IX of the Educational Acts of 1972, 20 U.S.C. sections §1681 *et seq*.  In addition, Mr. Davis brings forth a claim regrading his right to be free from retaliation by a governmental entity, pursuant to the 1st Amendment to the United States Constitution.  Moreover, the failure of the School District to satisfy the *Due Process* standards set forth in state law regarding notice, likewise violates such rights pursuant to the 14th  Amendment to the United States Constitution.  Further, such procedural violations were not *de minimus* but rather effectuated a substantive constitutional right to familial integrity.

6.      In addition, because the School District developed and implemented a conditional or temporary trespass ban against him, without support in the statute or regulations for such a ban, he requests equitable relief declaring that the offending school-board policies and procedures noted above, be ruled as unconstitutional or unconstitutional as to him.  *See* Federal Rules of Civil Procedure 57; *see also* 28 U.S.C. §2201, 2202.  Further that the District be enjoined from continuing the use of the *Conditional Tress Warning* as to Plaintiff, *see* Federal Rules of Civil Procedure 65.  Last, that any School District documents, held in any format, reasonably related to the unconstitutional acts noted herein be destroyed and that he be given a public apology in School District media and communications.

## II. JURISDICTION

7.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and §1343 because

the matters in controversy arise under the laws and rules of the United States as noted above.

8.    Additionally this Court has the ability to provide equitable relief under the common law, declaratory relief under Rule 65 and declaratory judgment under Rule 57 and provide reimbursement of reasonable attorneys fees and costs related thereto.

### III.  VENUE

9.    Under 28 U.S.C. §1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiff's claims occurred in the Western District of Texas and in the Austin Division.

### IV.  PARTIES

10.    Mike Davis lives in Austin, Texas. His daughter AMD is a student in the Austin Independent School District catchment area.

11.    The Austin Independent School District is a school district organized under the laws of the State of Texas. At all times pertinent to this case, J.M. was a student at the Austin Independent School District. The Austin ISD may be served by Superintendent, Dr. Paul Cruz, at 1111 W. Sixth St., Austin, T, 78703.  The Plaintiffs reasonably believe service will be accepted, and the District will answer this complaint by and through the Honorable Ms. Ylise Janssen, Attorney nd General Counsel for Austin Independent School District.

### V.  LEGAL BACKGROUND OF PLAINTIFFS CLAIMS

A.    RELEVANT FEDERAL LAW

12.    The Educational Acts of 1972 passed through Congress as Public Law No. 92-318, 86 Stat. 235 (June 23, 1972) and codified at 20 U.S.C. sections 1681 through 1688.  It is commonly known as "Title IX" and states (in part) that:

> "No person in the United States shall, on the basis of gender, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance."

It is intended to remedy the effects of discrimination based upon sex, gender or gender stereotypes. Moreover it is to assure that a student is not a victim of bullying, harassment, sexual harassment, assault or sexual assault because of their membership in a protected class. A person who is victim of retaliation because he or she advocated on behalf of a person who is a member of a protected class, has a plausible claim under Title IX for being a victim of retaliation.

B.     RELEVANT FEDERAL REGULATIONS

13.    The United States Department of Education, *Office of Civil Rights* ("OCR") has long given a public school direction on issues related to discrimination based upon sex, gender and gender stereotypes, especially in regard to athletic activities. The DOE's regulations, *see* 34 C.F.R. §106.41, set forth standards for assessing a program's compliance with Title IX and the Court's deference to the interpretations that these regulations provide. *See* Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The athletics regulations provide that:

> "[n]o person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in any interscholastic, intercollegiate, club or intramural athletics offered by a recipient, and no recipient shall provide any such athletics separately on such basis." 34 C.F.R. § 106.41(a).

The Department of Education gives further *Policy Interpretation* which provides:

> "The Department will assess compliance with ... the general athletic program requirements of the regulation by comparing the availability, quality and kinds of benefits, opportunities, and treatment afforded

members of both sexes. Institutions will be in compliance if the compared program components are equivalent, that is, equal or equal in effect. Under this standard, identical benefits, opportunities, or treatment are not required, provided the overall effects of any differences is negligible.  Policy Interpretation, 44 Fed.Reg. at 71,415. "If comparisons of program components reveal that treatment, benefits, or opportunities are not equivalent in kind, quality or availability, a finding of compliance may still be justified if the differences are the result of nondiscriminatory factors." Id.  The Policy Interpretation provides a list of factors that may justify differences in treatment. Id. at 71,415-16.

C.     RELEVANT AISD POLICIES

14.    The Austin ISD states in its policies and procedures that the goal of the various physical education programs is to foster safe and enjoyable fitness activities for all students. School board policy also delegates qualified physical education staff to provide developmentally appropriate physical education instruction. Additionally, a policy related to *Equal Educational Opportunity* [FB (LEGAL)] addresses discrimination based upon sex or gender, as contemplated by Title IX. Not withstanding the laudable goal to treat boys and girls the same, as noted above, they often do not.  The District also has a policy entitled *Student Welfare Freedom From Discrimination, Harassment and Retaliation* (FFH LEGAL and LEGAL).

D.     TEXAS LAW ON SCHOOL TRESPASS

1.     Statute On Trespass

15.    Texas Education Code, Section 37.105 states:

"(a)  A school administrator, school resource officer, or school district peace officer of a school district may refuse to allow a person to enter on or may eject a person from property under the district's control if the person refuses to leave peaceably on request and:

(1)  the person poses a substantial risk of harm to any person;  or

(2)  the person behaves in a manner that is inappropriate for a school setting and:

(A)  the administrator, resource officer, or peace officer issues a verbal warning to the person that the person's behavior is inappropriate and may result in the person's refusal of entry or ejection;  and

(B)  the person persists in that behavior.

(b)  Identification may be required of any person on the property.

(c)  Each school district shall maintain a record of each verbal warning issued under Subsection (a)(2)(A), including the name of the person to whom the warning was issued and the date of issuance.

(d)  At the time a person is refused entry to or ejected from a school district's property under this section, the district shall provide to the person written information explaining the appeal process established under Subsection (h).

(e)  If a parent or guardian of a child enrolled in a school district is refused entry to the district's property under this section, the district shall accommodate the parent or guardian to ensure that the parent or guardian may participate in the child's admission, review, and dismissal committee or in the child's team established under Section 504, Rehabilitation Act of 1973 ( 29 U.S.C. Section 794 ), in accordance with federal law.

(f)  The term of a person's refusal of entry to or ejection from a school district's property under this section may not exceed two years.

(g)  A school district shall post on the district's Internet website and each district campus shall post on any Internet website of the campus a notice regarding the provisions of this section, including the appeal process established under Subsection (h).

(h)  The commissioner shall adopt rules to implement this section, including rules establishing a process for a person to appeal to the board of trustees of the school district the decision under Subsection (a) to refuse the person's entry to or eject the person from the district's property."

2.      Rule On Trespass

16.    The rule promulgated by the Texas Education Agency, at 19 Texas Administrative Code,

Section 103.1207 regarding *Unauthorized Persons: Refusal of Entry, Ejection, Identification,*

*and Appeal* reiterates the statue and similarly states:

(a)  A school administrator, school resource officer, or school district peace officer of a school district may refuse to allow a person to enter on or may eject a person from property under the district's control if the person refuses to leave peaceably on request and:

(1)  the person poses a substantial risk of harm to any person; or

(2)  the person behaves in a manner that is inappropriate for a school setting; and

(A)  the administrator, resource officer, or peace officer issues a verbal warning to the person that the person's behavior is inappropriate and may result in the person's refusal of entry or ejection; and

(B)  the person persists in that behavior.

(b)  Identification may be required of any person on property under a district's control.

(c)  Each school district shall maintain a record of each verbal warning issued under subsection (a)(2)(A) of this section, including the name of the person to whom the warning was issued and the date of issuance.

(d)  At the time a person is refused entry to or ejected from a school district's property under this section, the district shall provide to the person written information explaining the appeal process set forth in subsection (h) of this section.

(e)  If a parent or guardian of a child enrolled in a school district is refused entry to the district's property under this section, the district shall accommodate the parent or guardian to ensure that the parent or guardian may participate in the child's admission, review, and dismissal committee or in the child's team established under the Rehabilitation Act of 1973, Section 504, (29 United States Code, §794), in accordance with federal law.

(f)  The term of a person's refusal of entry to or ejection from a school district's property under this section may not exceed two years.

(g)  A school district shall post on the district's Internet website and each district campus shall post on any Internet website of the campus a notice regarding the provisions of this section, including the appeal process set forth in subsection (h) of this section.

(h)  A school district's board of trustees shall adopt a policy that uses the school

district's existing grievance process to permit a person refused entry to or ejected from property controlled by the school district under this section to appeal such refusal of entry or ejection. The policy must permit a person appealing under this section to address the school district's board of trustees in person within 90 days of the commencement of the appeal, unless the appeal is granted before the school district's board of trustees considers the appeal.

(i)  A decision of the board of trustees to grant or deny an appeal under this section is final and may only be further appealed under the applicable provisions of Texas Education Code, §7.057.

Statutory Authority: The provisions of this §103.1207 issued under the Texas Education Code, §37.105.

Source: The provisions of this §103.1207 adopted to be effective August 26, 2018, 43 TexReg 5365.

E.      RELEVANT AISD POLICIES ON TRESPASS

17.     The School District has a policy called COMMUNITY RELATIONS CONDUCT ON

        SCHOOL PREMISES- GKA (LEGAL) which states:

        A school administrator, school resource officer, or school district peace officer may refuse to allow persons to enter on or may eject a person from property under the district's control if the person refuses to leave peaceably on request and:

        1. The person poses a substantial risk of harm to any person; or

        2. The person behaves in a manner that is inappropriate for a school setting and:

        a. The administrator, resource officer, or peace officer issues a verbal warning to the person that the person's behavior is inappropriate and may result in the person's refusal of entry or ejection; and

        b. The person persists in that behavior.
        Identification may be required of any person on property under the district's control.

        A district shall maintain a record of each verbal warning issued, including the name of the person to whom the warning was issued and the date of issuance.

        At the time a person is refused entry to or ejected from a school district's property,

the district shall provide to the person written information explaining the appeal process.

If a parent or guardian of a child enrolled in a school district is refused entry to the district's property, the district shall accommodate the parent or guardian to ensure that the parent or guardian may participate in the child's admission, review, and dismissal committee or in the child's team established under Section 504, Rehabilitation Act of 1973 (29 U.S.C. Section 794), in accordance with federal law.

The term of a person's refusal of entry to or ejection from a school district's property under this section may not exceed two years.

A district shall post on the district's website and each district campus shall post on any campus website a notice regarding these provisions, including the appeal process.

The board shall adopt a policy that uses the district's existing grievance process [see FNG, GF] to permit a person refused entry to or ejected from property controlled by the district to appeal such refusal of entry or ejection. The policy must permit a person appealing under this section to address the board in person within 90 days of the commencement of the appeal, unless the appeal is granted before the board considers the appeal.

The board's decision to grant or deny an appeal under this section is final and may only be further appealed under the applicable provisions of Texas Education Code 7.057.

Education Code 37.105; 19 TAC 103.1207.

18.    The School District has promulgated a related policy called GKA (LEGAL) which states:

In accordance with Education Code 37.105, a District official shall provide a person refused entry to or ejected from property under the District's control written information explaining the right to appeal such refusal of entry or ejection under the District's grievance process.

A person appealing under the District's grievance process shall be permitted to address the Board in person within 90 days of filing the initial complaint, unless the complaint is resolved before the Board considers it. [See FNG and GF]

19.    Additionally the School District has developed *form letters* including one giving a person notice of the problems with a *Preliminary Warning Letter* (GKA Exhibit A) stating:

First Original Complaint                                                                                                10

"Dear _____:

*[Describe the incident that occurred and the specific behaviors that are inappropriate in as much detail as possible, including date, time, quotes, and the like.]*

Should this inappropriate behavior as described continue, please be aware that all future contact, either in person, by telephone, or by e-mail with staff members, parents, or students on this campus, will require my prior written consent and your compliance with other specified conditions. Any violation of this directive and/or reoccurrence of your behavior may also be cause for further administrative and/or legal action.

Enclosed for your information are copies of Board policies GKA(LEGAL), GKA(LOCAL), GKA(REGULATION), and GKC(LOCAL) regarding conduct on school premises and visitors to the schools.

Thank you for your cooperation.

Sincerely,

Principal"

20.    Further, the School District has developed another *form letter* including one giving a person notice of a *Conditional Ban Let*ter (GKA Exhibit B) stating:

"Dear _____:

*[Describe the incident that occurred and the specific behaviors that are inappropriate in as much detail as possible, including date, time, quotes, and the like.]*

You were previously warned in my letter of _____ *(date)* that continuation of this inappropriate behavior as described above would be cause for further administrative action.

You are hereby advised that all future contact, either in person, by telephone, or by e-mail with staff members, parents, or students on this campus will require my prior written consent.

Also, you must abide by the following conditions set forth below:

_____

Any violation of this directive and/or reoccurrence of your behavior may be cause for further administrative and/or legal action, including an unconditional ban from

the campus. This directive will remain in effect until _____, at which time we will determine whether continuation is warranted or no longer necessary.

Once again, I am enclosing for your information copies of Board policies GKA(LEGAL), GKA(LOCAL), GKA(REGULATION), and GKC(LOCAL) regarding conduct on school premises and visitors to the schools.

Thank you for your cooperation.

Sincerely,

Principal

Pmc

Enclosures

cc:
Associate Superintendent
General Counsel
Austin ISD Campus Police"

21.    Last, the School District developed a *form letter* for a complete ban. (GKA Exhibit C).

## VI.  <u>FACTUAL RESUME</u>

A.    ABOUT PLAINTIFF

22.    Plaintiff Mike Davis is the father of AMD a student at the Austin Independent School District.  While a student at the Clint Middle School she was a victim of "body shaming," so issues related to he body was a special concern to both AMD and her father.

23.    At all time relevant to this case, she was a student at the Bowie High School.

24.    Mr. Davis is a very loving and caring father.  Unfortunately he and AMD's mother are divorced, so he functions with the school district as a single parent.

25.    Mr. Davis works as a computer programmer.   He has absolutely no criminal record.

B.    THE INCIDENTS IN QUESTION

26.     In the Fall of 2018 AMD was a 9th Grade Student and member of the all-female Color Guard Program.  While at a practice, she and the other girls were not permitted to have water with them even though the boys football team members were not only permitted to have water, but were encouraged to drink.  AMD told her father and he brought forward their concerns to school district staff.

27.     Additionally, AMD was concerned that she and he teammates had to wear clothing that was particularly revealing.  Moreover, AMD in particular was very uncomfortable wearing such clothing, particularly during her menses cycle. Father again brought forward their concerns to school district staff.

28.     AMD was also concerned that she and her teammates were being kept late after practice.  In fact, Mr. Davis was particularly concerned that practices were ending up so late that it was effecting his daughter's time for studies, dinner and sleep.  He again brought forward his concerns to school district staff.  When father met with a school official to address these various about the all girl Color Guard Program that staff member became very aggressive and defensive.

29.     Later that fall, Mr. Davis had concerns about working as a team to help his daughter better her grades.  Specifically, that if she had a poor grade on a test father asked the teacher for a copy of the test, so that he could work with his daughter on areas of deficiency.  Without reason, that request was refused.   Father brought forward these concerns but to no avail except that he was told he could make an appointment with a teacher to see a test result, but could not get a copy.  When he asked a particular teacher for information about a test, he was told she could not help him.

30.   Finally after making sending out multiple emails for a meeting, in mid-December, just before

school was to get out for Christmas Break, Plaintiff was able to meet with Dr. Shapiro, an

Assistant Superintendent and address a number of concerns.  The meeting went well and a

number of agreements were developed, including father was to receive relevant homework

assignments and information about tests.  Unfortunately the Principal of Bowie High School,

Mr. Robinson failed to assure this agreement was kept.  Mr. Davis again brought forward his

concerns to Dr. Shapiro and other staff, again in late January of 2019.

31.   A few days, now in early February, AMD was injured during a school program.  She had golf

ball size injury on her right knee, was limping, was crying and told her father she wanted to

leave school to go to a physician.  After seeing the physician it was diagnosed as bursitis.

32.   During the month Mr. Davis continued to be frustrated with the failure of the staff to fulfill

the agreements he had made with Dr. Shapiro.  He was compelled to file a complaint directly

to the School Board but never received a response.

33.   On March 4th there was another meeting with school officials.  This time AMD's mother

attended, Among a number of issues discussed, Mr. Davis brought forward concerns that

there were no financial statements provided by the Booster Club related to the Color Guard

Team.  Mr. Robinson stated essentially, if father did not like how things were being run,

AMD could leave the team.

34.   Texas Education Code, Section 37.105 would permit a school administrator at the Bowie

High School or another with the Austin Independent School District to refuse to permit Mr.

Davis to return to the school immediately, if he posed a substantial risk of harm to any person

or behaved in a manner that is inappropriate for a school setting and first received a verbal

warning and nevertheless, persisted in that behavior.

35.    Notwithstanding state law, Texas Education Code regulations and AISD School Board Policies and Procedures, on March 14, 2019 the Principal of Bowie High School, Mark Robinson sent out via certified mail, a letter to Mr. Davis.   Specifically, that he was "conditionally banned from all future campus visits, either in person or by telephone, with staff members, parents, or students on the James Bowie High School campus and from participation in James Bowie High School 'school-related events' unless given my express prior written consent." He was given permission to both drop and pick up his daughter from school.  The ban was set through the end of the Spring 2019 school year and through the end of 2020 Spring semester.

36.    The letter states that certain policies and procedures were provided but they were not.

37.    Mr. Davis never received the required specific notice in the form of a *verbal warning,* that if he persisted in the purported offensive behaviors, a ban, whether conditional or otherwise, would be applied.

38.    He never was provided information about just what behaviors were of concern.

39.    Moreover, and upon reason and belief, there is nothing in any record related to this situation, written, in electric format or otherwise which evidences that Mr. Davis actually was actually provided and received such a required verbal warning.

40.    Additionally, School Board Policy GKA (LOCAL), in accordance with Texas Education Code 37.105, requires that a District official shall (emphasis added) provide a person refused entry to or ejected from property under the District's control, written information explaining the right to appeal such refusal of entry or ejection under the District's grievance process.

The *Conditional Ban Letter* did not provide Mr. Davis this necessary information either.

41. The letter was copied to the District's General Counsel, Dr. Craig Shapiro, Associate Superintendent for High Schools. It was also sent to the entire Austin Independent School District Campus Police which includes 84 full-time officers, 43 school resource officers, 20 patrol officers and 39 civilian staff. Without saying so it would be reasonable to believe that administrative staff at the high school and all of AMD's teachers, also knew of the ban.

42. AMD is no longer on the Color Guard Team.

43. If a student had brought a handgun to campus on March 4th of 2019, that student could be expelled for a year. Texas Education Code §37.007(e). Here Mr. Davis was banned from the school for just less than two years, for bringing his voice to the campus.

## VII. <u>STATE ACTION</u>

44. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth. In addition, each paragraph below incorporates by reference as if fully set forth, the paragraph above it, as well.

45. The District, in any capacities and in all matters, acted under color of state law when it permitted Plaintiffs to be subjected to the wrongs and injuries set forth herein.

## VIII. <u>EQUITABLE ISSUES AND RELIEF</u>

46. As noted above Texas Education Code §37.005 addresses issues regarding School Trespass. First, and in regard to the law itself there is nothing that gives a school district the authority to issue a conditional ban. Nor do the Commissioner's Rules 103.1201 at Chapter 103 [Health and Safety; Subchapter CC, Concerning School Safety and Discipline]. Nor does any School Board policy and procedure. As such, the *Conditional Ban Letter* affixed against

Mr. Davis should be declared unconstitutional, or unconstitutional as applied. *See* Federal Rules of Civil Procedure 57; *see also* 28 U.S.C. §2201, 2202.

47. Further that the District be enjoined from continuing the use of the *Conditional Tress Warning* as to Plaintiff, *see* Federal Rules of Civil Procedure 65 and it be immediately rescinded as to Plaintiff.

48. In addition and in the alternative, even assuming that the Board has the ability to promulgate such a policy itself, the current *Conditional Ban Letter* has terms and conditions not in law or rule and are thus unreasonable, as applied. There is nothing in the law or rules, or school board policies and procedures that gives the District ability to restrict and even fully cut-off phone calls from a parent. Additionally, the law only permits, as does the Commissioner's Rules, that an actual full rejection be permitted for up to two years. As there is no specific statutory or regulatory authority to extend such a draconian[1] imposition of two years for a *Conditional Ban,* it too should be declared unconstitutional, or unconstitutional as applied. *See* Federal Rules of Civil Procedure 57; *see also* 28 U.S.C. §2201, 2202 rescinded for "time-served."

## IX. <u>UNCONSTITUTIONAL POLICIES, PROCEDURES, PRACTICES & CUSTOMS</u>

49. Plaintiff incorporates by reference all the above related paragraphs, as well as those below, with the same force and effect as if herein set forth.

50. During the relevant time period contemplated by this cause of action, the AISD School Board had an actual practice and custom of conscious and deliberate indifference to the federal law,

---

[1]. By way of comparison, and while not an exact parallel, a student who brings a gun to campus generally will be expelled from campus for a year. Texas Education Code 37.007(e). Mr. Davis should not be treated worse than a person who brings a gun to school.

federal rules, directives from federal executive agencies and their own School Board policies and procedures in regard to the treatment of AMD and her father, Mike Davis, and such failures were a moving force in the injuries to which each seeks recovery pursuant to 42 U.S.C. §1983.

51.     In addition, and in the alternative, this School Board obviously failed to correctly supervise staff in regard to the laws, regulations and directives as noted above. Such failures, in addition and in the alternative to the above, rise to the level of a separate violation of the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

52.     Last, and in addition, and also in the alternative to the above, this School Board obviously has failed to train staff in regard to the laws, regulations and directives as noted above. Such failures, in addition and in the alternative to the above, rise to the level of a separate violation of the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983. The need for such training is obvious when looking at the issues facing the School District.

## X.  CLAIMS BASED UPON VIOLATIONS OF THE U.S. CONSTITUTION

53.     Plaintiff incorporates by reference all the above related paragraphs, as well as those below, with the same force and effect as if herein set forth.

A.     VIOLATIONS TO THE FIRST AMENDMENT

54.     Mike Davis has a right, pursuant to the First Amendment of the Constitution of the United States, to the file a grievance with the government without fear of retaliation. As the Austin Independent School retaliated against Mr. Davis for advocating on behalf fo his daughter and

complaining to School District Officials and experienced retaliation for such advocacy, he may protect such constitutional right pursuant to 42 U.S.C. §1983.

B.    VIOLATION TO THE RIGHT OF DUE PROCESS

55.    Plaintiff contends, in addition and in the alternative to the above that the acts and omissions of the Defendant Austin ISD violated the rights of Mike Davis pursuant to the Fourteenth Amendment of the Constitution of the United States for which he seek recovery pursuant to 42 U.S.C. §1983 as such acts and omissions violated his right to family integrity and life, liberty and the pursuit of happiness for the acts and omissions noted above and he may protect such constitutional right pursuant to 42 U.S.C. §1983.

## XI.  RATIFICATION AND RESPONDEAT SUPERIOR

56.    Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

57.    Austin ISD ratified the acts, omissions and customs of school district personnel and staff.

58.    As a result, Austin ISD is responsible for the acts and omissions of staff persons who violated the rights of Plaintiff.

## XII.  PROXIMATE CAUSE

59.    Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

60.    Each and every, all and singular of the foregoing acts and omissions, on the part of the School District constituted a direct and proximate cause of the injuries and damages set forth herein.

## XIII.  DAMAGES

61.     Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

62.     As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered injuries and damages, for which he is entitled to recover herein including but not limited to:

    a.     Emotional Anguish;

    b.     Stigma;

    c.     Loss of consortium;

    d.     Stigma; and

    e.     Various out-of-pocket expenses incurred.

## XIV. ATTORNEY FEES AND COSTS

63.     Plaintiff incorporates by reference all the above related paragraphs, as if fully set forth herein.

64.     It was necessary for Plaintiff to retain the undersigned attorneys to file this lawsuit. Upon judgment, Plaintiff is entitled to an award of attorney fees and costs pursuant to 42 U.S.C. §2000d et seq. and 42 U.S.C. §1985 and §1988.

## XV. SPOLIATION

65.     Plaintiff hereby requires and demands that Austin ISD preserve and maintain all evidence pertaining to any claim or defense related to the assault or other violations that make the basis of the complaint and the damages resulting therefrom, including statements, photographs, videotapes, audiotapes, surveillance, security tapes, business or medical records, incident reports, telephone records, emails, text messages, electronic data/information, and any other evidence regarding the violations set forth herein.

66.     Failure to maintain such items will constitute "spoliation" of evidence, which will necessitate

use of the spoliation inference rule- an inference or presumption that any negligent or intentional destruction of evidence was done because the evidence was unfavorable to the spoliator's case.

## XVI. DEMAND FOR JURY TRIAL

67.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays for judgment against the Defendant School District in the manner and particulars noted herein and above, in an amount sufficient to fully compensate him for the elements of damages noted herein and above, judgment for damages, equitable and declaratory relief, recovery of attorney's fees and costs for the preparation and trial of this cause of action and for its appeal if required, together with pre-and post-judgment interest and court costs expended herein, and for such other relief as the Court deems just and proper whether it be in law, or in equity, or as to both.

Respectfully submitted,
/s/ Martin J. Cirkiel
Mr. Martin J. Cirkiel, Esq.
State Bar No.: 00783829
Cirkiel & Associates, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas  78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
marty@cirkielaw.com [Email]
**ATTORNEYS FOR PLAINTIFFS**