UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MIKE DAVIS,<br>　　　*Plaintiff*<br><br>v.<br><br>AUSTIN INDEPENDENT SCHOOL<br>DISTRICT,<br>　　　*Defendant* | §<br>§<br>§<br>§<br>§ 　　CIVIL NO. 1:20-CV-353-LY<br>§<br>§<br>§<br>§ |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

**TO: THE HONORABLE LEE YEAKEL**
　　**UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant's Second Amended Motion to Dismiss (Dkt. 17), filed August 12, 2020; Plaintiff's Response (Dkt. 23), filed September 8, 2020; and Defendant's Reply (Dkt. 25), filed September 15, 2020. On September 11, 2020, the District Court referred the motion and related filing to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

**I.　　General Background**

Plaintiff Mike Davis's minor daughter, AMD, is a student at James Bowie High School ("Bowie") in the Austin Independent School District ("AISD"). From 2018 through 2020, AMD was a member of the Bowie's Color Guard Team,[1] which consisted of all female students. Plaintiff alleges that in Fall 2018, AMD complained to him that AMD and her Color Guard teammates (1) were not allowed to have water with them during their practices, although the football team

---

[1] Plaintiff's Response also refers to the "Cheer Leading Squad," "Cheer Squad," and "Cheer Team" instead of "Color Guard Team." *See* Dkt. 23 at 3-4, 15. These references appear to be typographical errors.

was; (2) did not have trained medical staff to support them during their practices, like the football team did; (3) had to wear revealing clothing; and (4) were routinely kept late after practice. Dkt. 15 ¶¶ 34-39. Plaintiff alleges that he "brought forward [AMD's] concerns to School District staff." *Id.* ¶¶ 37-40. Plaintiff contends that when he relayed these concerns to Color Guard Director Joseph Powell, Powell became "very aggressive and angry." *Id.* ¶ 40.

Later that fall, Plaintiff alleges, one of AMD's teachers refused to give him a copy of a test on which AMD received a poor grade. Plaintiff then met with AISD Superintendent Dr. Craig Shapiro, who allegedly agreed that the school would provide Plaintiff with homework assignments and test information if requested. Plaintiff alleges that Bowie Principal Mark Robinson failed to abide by the agreement. Plaintiff contends that he "was compelled to file a complaint directly with the School Board," but never received a response. *Id.* ¶ 46. Plaintiff also complained to school officials that he was concerned "there were no financial statements provided by the Booster Club related to the Color Guard Team." *Id.* ¶ 47. Plaintiff alleges that Principal Robinson told him that "if [Plaintiff] did not like how things were being run, AMD could leave the team." *Id.* ¶ 48.

In March 2019, AMD injured her knee when she was performing a Color Guard routine at Bowie. Plaintiff alleges that after he saw AMD leave the gymnasium "limping and crying," he went to "the unmarked room where the Color Guard Team had gone and attempted to retrieve AMD" so that she could be seen by a doctor. *Id.* ¶ 51. After Plaintiff "banged on the door," he alleges, "Color Guard personnel came to the door and told [Plaintiff] they would not let [AMD] leave." *Id.* Plaintiff alleges that he then "shouted back into the room that my daughter was coming with him to seek medical attention." *Id.* ¶ 52. Plaintiff claims that although he "never crossed the threshold of the door to the room with any part of my body . . . someone made a complaint that he did." *Id.*¶¶ 53-54.

On March 14, 2019, Plaintiff alleges that Principal Robinson sent Plaintiff a "Conditional Ban Letter"[2] notifying him that he was "conditionally banned from all future campus visits, either in person or by telephone, with staff members, parents, or students on the James Bowie High School campus and from participation in James Bowie High School 'school-related events' unless given my express prior written consent." *Id.* ¶ 58. The ban did not prevent Plaintiff from dropping off or picking up his daughter from school. Plaintiff alleges the letter further notified Plaintiff that "[t]he ban was set through the end of the Spring 2019 school year and through the end of 2020 Spring semester." *Id.* Plaintiff contends that he never received a verbal warning before receiving the Conditional Ban Letter, in violation of school policy.

Plaintiff alleges that Principal Robinson later "added another impediment to Mr. Davis' ability to watch his daughter in practices and events" by requiring Plaintiff to ask Principal Robinson for permission to observe his daughter participate in school programs 48 hours in advance of any event. *Id.* ¶ 73. Plaintiff alleges that AMD then quit the Color Guard Team "because of the way her father was treated." *Id.* ¶ 74.

Plaintiff contends that he appealed the Conditional Ban through AISD's grievance process, but that it was upheld. Although the Conditional Ban Letter informed Plaintiff that the ban would expire at the end of the 2020 Spring Semester, Plaintiff alleges that he never received any notification from the school that the ban ended. Plaintiff contends that

> Whether the ban is still in place, in total or in part, Mr. Davis continues to be seen as object of derision and scorn in the school community. He would not have such a "Scarlet Letter" available to the public or "the mark of Cain" but for the unconstitutional acts and omissions of the Austin Independent School District Officials.

*Id.* ¶ 81.

---

[2] Although Plaintiff attached a blank conditional ban letter form to his Response, he did not attach the actual Conditional Ban Letter he received from Principal Robinson. Dkt. 23-2 at 5.

On April 2, 2020, Plaintiff filed suit against AISD, alleging that the Conditional Ban issued against him violated his rights under Title IX of the Education Amendments of 1972 and § 1983 of the Civil Rights Act. Specifically, Plaintiff alleges that the Conditional Ban violated his Fourteenth Amendment rights to substantive and procedural due process, family integrity, and life, liberty and the pursuit of happiness, and his First Amendment right "to redress grievances with a governmental entity without fear of retaliation." Dkt. 15 ¶ 94. Plaintiff further alleges that AISD violated Title IX by retaliating against him "for advocating that his daughter, AMD, was a victim of discrimination based upon sex, as contemplated by Title IX." *Id.* ¶ 98. Plaintiff seeks declaratory relief that the Conditional Ban is unconstitutional, monetary relief for emotional anguish, stigma, and loss of consortium, and attorneys' fees and costs.

AISD now moves to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) for mootness and, alternatively, under Rule 12(b)(6) for failure to state a plausible claim for relief.

## II.  Legal Standards

### A.  Rule 12(b)(1)

Federal district courts are courts of limited jurisdiction and may exercise only such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," and over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332.

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden

of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that

are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161.

### III.   Analysis

AISD argues that all of Plaintiff's claims should be dismissed as moot under Rule 12(b)(1) because the Conditional Ban entered against Plaintiff no longer is in effect. Alternatively, AISD argues that Plaintiff's claims should be dismissed under Rule 12(b)(6) for failure to state a plausible claim for relief. The Court considers in turn AISD's arguments under Rule 12(b)(1) and Rule 12(b)(6).

**A. Jurisdiction and Mootness**

The doctrine of mootness arises from Article III of the Constitution, which provides federal courts with jurisdiction over a matter only if there is a live "case" or "controversy." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Accordingly, "[t]o invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Chafin v. Chafin*, 568 U.S. 165, 171-72 (2013) (citation omitted). District courts may not decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law would be on a hypothetical state of facts. *Id.* at 172. There is no case or controversy, and a suit becomes moot, when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *Id.* The case-or-controversy requirement persists through all stages of federal judicial proceedings. *Id.*

As noted, AISD argues that all of Plaintiff's claims are moot because the Conditional Ban entered against Plaintiff "expired by its own terms at the end of the Spring 2020 semester [May 28, 2020]." Dkt. 17 at 5. AISD avers that "whatever the real or alleged effects of the letter, the controversy related to its issuance has ended." *Id.* at 6. Thus, AISD contends, there is no case or controversy within the jurisdiction of the Court.

The Court agrees with AISD that Plaintiff's claim for declaratory relief declaring the Conditional Ban unconstitutional is moot. "If, during the pendency of litigation, the complaining party receives the relief he originally sought to obtain in court, the action becomes moot and must be dismissed for lack of subject-matter jurisdiction." *Escobar v. Barr*, 824 F. App'x 300 (5th Cir. 2020). Because the Conditional Ban has expired, Plaintiff's request for a declaration that "the Conditional Ban Letter affixed against Mr. Davis should be declared unconstitutional" is moot. *See JSLG, Inc. v. City of Waco*, 504 F. App'x 312, 318 (5th Cir. 2012) (finding that plaintiff's claim for declarative relief declaring city ordinance unconstitutional was moot where plaintiff was no longer subject to regulation under challenged ordinance "and thus no longer has a cognizable interest in declaring the ordinance facially unconstitutional").

The Court further finds that this case does not fall within the limited "exception to the mootness doctrine for a controversy that is capable of repetition, yet evading review." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018). A dispute qualifies for that exception only "if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Id.* Under the exception's "capable of repetition" prong, Plaintiff "must show either a demonstrated probability or a reasonable expectation, that they will be subject to the same unlawful governmental action again." *Libertarian Party v. Dardenne*, 595

F.3d 215, 217 (5th Cir. 2010). "A 'mere physical or theoretical possibility' is not sufficient to satisfy this prong of the exception." *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).

Plaintiff has alleged no facts demonstrating a reasonable expectation that AISD will impose another Conditional Ban on him, and in fact argues that this exception to the mootness doctrine does not apply. Response, Dkt. 23 at 10 ("Davis has provided no facts in support of this exception to *mootness* doctrine."). Accordingly, Plaintiff has not sustained his burden to show that this exception or any other exception to mootness applies. His claim for declaratory relief that the Conditional Ban unconstitutional is moot and should be dismissed under Rule 12(b)(1).

Plaintiff's remaining claims and requests for relief under Title IX and § 1983, however, are not moot. As the Supreme Court has explained: "Where one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy." *Powell v. McCormack*, 395 U.S. 486, 497 (1969). Accordingly, the Court has jurisdiction over Plaintiffs' claims under § 1983 and Title IX, and the undersigned recommends that AISD's Motion to Dismiss under Rule 12(b)(1) should be denied.

### B. Failure to State a Claim

The Court now consider whether Plaintiff has stated a plausible claim for relief under Rule 12(b)(6).

#### 1. Title IX

Title IX provides that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX is "enforceable through an implied private right of action," and "monetary damages are available in the implied private action." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281(1998). A plaintiff may obtain

damages under Title IX "where the funding recipient engages in intentional conduct that violates the clear terms of the statute." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642 (1999).

The Supreme Court has "consistently interpreted Title IX's private cause of action broadly to encompass diverse forms of intentional sex discrimination." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183 (2005). Thus, a school's "deliberate indifference" to a student's claims of sexual harassment by a classmate may amount to an intentional violation of Title IX. *Davis*, 526 U.S. at 643-46. Moreover, "retaliation against individuals because they complain of sex discrimination" also is "intentional conduct that violates the clear terms of the statute." *Jackson*, 544 U.S. at 183 (citing *Davis*, 526 U.S. at 642). The statute "does not require that the victim of the retaliation must also be the victim of the discrimination," and thus "retaliation claims extend to those who oppose discrimination against others." *Id.* at 179.

Here, Plaintiff alleges that AISD "retaliated against him for advocating that his daughter, AMD, was a victim of discrimination based upon sex," in violation of Title IX. Dkt. 15 ¶ 98. To establish a prima facie case of unlawful retaliation, Plaintiff must show that: (1) he engaged in a protected activity; (2) he suffered a material adverse action; and (3) a causal link exists between the protected activity and the adverse action. *Collins v. Jackson Pub. Sch. Dist.*, 609 F. App'x. 792, 795 (5th Cir. 2015). To prevail, Plaintiff must allege sufficient facts showing that AISD "retaliated against him *because* he complained of sex discrimination." *Jackson*, 544 U.S. at 184. AISD argues that Plaintiff has failed to state a plausible claim on any of these elements.

A retaliation plaintiff must show that the funding recipient or its representatives took an adverse action against him because he complained of sex discrimination. *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 586 (5th Cir. 2020). Thus, Plaintiff must show that an AISD official received "actual notice" of the alleged sex discrimination. *Jackson*, 544 U.S. at 181; *see also*

*Gebser*, 524 U.S. at 290 ("[W]e hold that a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond.").

In his Second Amended Complaint, Plaintiff does not allege sufficient facts showing that he complained to AISD that AMD was being discriminated against because of her sex. Therefore, Plaintiff has failed to show that AISD school officials had "actual notice" of the alleged sex discrimination. As stated above, Plaintiff alleges that AMD complained to him that she and her Color Guard teammates were not allowed to have water with them during practices and did not have trained medical staff to support them during their practices, unlike the football team; had to wear revealing clothing; and routinely were kept late after practice. Dkt. 15 ¶¶ 34-39. Plaintiff also alleges that "he had concerns" that AMD's teachers were not sharing her homework assignments and test information with Plaintiff, and there were no financial statements provided by the Booster Club related to the Color Guard Team. *Id.* ¶¶ 41, 47.

Although Plaintiff contends that he "brought forward" all of these "concerns" to AISD staff, he does not allege that he ever complained that these actions were taken because of AMD and her teammates' gender. *See id.*; Dkt. 23 at 14. It is insufficient for Plaintiff to allege that AMD and her teammates are female, and that "unfavorable treatment must therefore be based on his sex." *Hundall v. Univ. of Texas at El Paso*, 2014 WL 12496895, at *16 (W.D. Tex. Feb. 21, 2014). While Plaintiff now complains that Bowie's actions were based on "the inequity between the ways boys and girls were being treated," Dkt. 15 at 37, he fails to allege any facts showing that he told AISD staff at any time before he received the Conditional Ban that AMD was being discriminated against or treated differently because of her gender. *See Jackson*, 544 U.S. at 181; *Gebser*, 524

U.S. at 290; *Sewell*, 974 F.3d at 586. Accordingly, Plaintiff has failed to show that AISD school officials had "actual notice" of the alleged sex discrimination. *Id.* Plaintiff has failed to demonstrate that he engaged in protected activity under Title IX and thus has not alleged a plausible Title IX retaliation claim.[3]

### 2.  42 U.S.C. § 1983

Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of "any rights, privileges, or immunities secured by the Constitution and laws." To state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009).

It is well established that a municipality or a local governmental unit, such as an independent school district, is not liable under § 1983 on the theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). To establish municipal liability under § 1983, a plaintiff must plead facts that plausibly establish (1) an official policy (2) promulgated by the municipal policymaker (3) that was the "moving force" behind the violation of the constitutional right. *Piotrowski*, 237 F.3d at 578.

---

[3] Because Plaintiff has not satisfied the first factor of his prima facie case, the Court need not address AISD's arguments as to the other factors.

An official policy can arise in various forms, including written policy statements, ordinances, or regulations, but also may arise in the form of a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* at 579. A policy or custom is official only when it results from the decision or acquiescence of the municipal officer or body with "final policymaking authority" over the subject matter of the offending policy. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). "Finally, a plaintiff must establish that the policy was the moving force behind the violation. In other words, a plaintiff must show direct causation." *Peterson*, 588 F.3d at 848. This means that "there must be a direct causal link" between the policy and the violation, not merely a "but for" coupling between cause and effect. *Id.* To sustain his claim against the City, therefore, Plaintiff must plead facts plausibly establishing a policymaker, an official policy, and a violation of constitutional rights for which the moving force is the policy or custom. *Piotrowski*, 237 F.3d at 578. Plaintiff need not offer proof of his allegations at this stage, but still must plead facts that plausibly support each element of § 1983 municipal liability. *See Iqbal*, 556 U.S. at 678.

AISD argues that Plaintiff's § 1983 claim should be dismissed because Plaintiff is attempting to hold AISD liable under §1983 on a *respondeat superior* theory. AISD avers that Plaintiff has failed to allege any facts showing that an AISD official policy or custom was the moving force behind the alleged constitutional violations.

Federal district courts have a limited role in reviewing the decisions of school officials:

> The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members, and § 1983 was not intended to be a vehicle for federal court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees.

*Wood v. Strickland*, 420 U.S. 308, 326 (1975), *overruled in part on other grounds*, *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). As one district court stated: "It is a great leap from the principal's office to the federal courthouse, and, in order to invoke federal jurisdiction, plaintiffs are required to demonstrate fact issues indicating not merely that they may have gotten a 'raw deal,' but that their constitutional rights may have been violated." *J.W. v. Desoto Cnty. Sch. Dist.*, No. 2:09-cv-00155-MPM-DAS, 2010 WL 4394059, at *3 (N.D. Miss. Nov. 1, 2010).

Even assuming that Plaintiff's allegations rise to the level of a constitutional violation, in order to hold AISD liable, Plaintiff must demonstrate that the alleged constitutional violations were made pursuant to an official AISD policy or custom. "A school district has no vicarious liability under § 1983. Rather, it is liable for the unconstitutional conduct of its policymakers, including persons to whom it has delegated policymaking authority in certain areas." *Barrow v. Greenville Indep. Sch. Dist.*, 480 F.3d 377, 380 (5th Cir. 2007). Thus, to allege a claim against AISD under § 1983, Plaintiff "must identify a policymaker with final policymaking authority and a policy that is the 'moving force' behind the alleged constitutional violation." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). Plaintiff fails to identify a policymaker with final policymaking authority who was the moving force behind the constitutional violations he alleges.

Texas law unequivocally delegates to the Board of Trustees "the exclusive power and duty to govern and oversee the management of the public schools of the district." TEX. EDUC. CODE. § 11.151(b). Therefore, the only policymaker for a school district in Texas is the Board of Trustees. *Rivera*, 349 F.3d at 247. To hold AISD liable, Plaintiff must show that the AISD Board of Trustees promulgated a policy or procedure that was the moving force behind the alleged constitutional violations. Plaintiff has not asserted any facts showing that the AISD Board of Trustees promulgated unconstitutional policies or customs that were the moving force behind the actions

he alleges. *See Doe v. Round Rock Indep. Sch. Dist.*, No. A-18-CV-00922-LY, 2019 WL 3891855, at *4 (W.D. Tex. Aug. 19, 2019) ("Plaintiff has failed to assert any facts showing that the RRISD Board of Trustees was the moving force behind any of the actions alleged in this suit and thus has failed to allege a § 1983 claim against RRISD."), *appeal dismissed*, 2019 WL 8359568 (5th Cir. Dec. 2, 2019).

Plaintiff makes a conclusory allegation that AISD had a policy and procedure of "permitting a Conditional Ban" and "giving a School Principal the authority" to issue such a ban,[4] but has asserted no facts showing that the Board delegated any of its policymaking authority to Principal Robinson or any other principal. *See Rivera*, 349 F.3d at 248 (rejecting allegation that school board delegated policymaking authority to principal where parents failed to cite official board document delegating authority to any principal). Moreover, Plaintiff cites "no Texas law empowering the Board with the authority to delegate its exclusive policymaking authority." *Id.* at 247.

To proceed beyond the pleading stage, "a complaint's description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018). Plaintiff's allegations merely demonstrate that Principal Robinson was the official who issued the Conditional Ban, which is insufficient to hold AISD liable under § 1983. *See id.; Doe*, 2019 WL 3891855, at *4-5. Plaintiff attempts to hold AISD responsible for Principal Robinson's actions in this case, which is the essence of *respondeat superior*. *Monell*, 436 U.S. at 694.

Because Plaintiff has failed "to state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678, AISD's Rule 12(b)(6) Motion to Dismiss should be granted.

---

[4] Dkt. 23 at 18.

### IV.     Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss (Dkt. 17) is **GRANTED IN PART** and **DENIED IN PART**. The Court **RECOMMENDS** that the District Court **DENY** Defendant's Motion to Dismiss under Rule 12(b)(1) except as to Plaintiff's request for a declaration that the Conditional Ban is unconstitutional. The Court **FURTHER RECOMMENDS** that the District Court **GRANT** Defendant's Motion to Dismiss and **DISMISS** this case with prejudice under Rule 12(b)(6).

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Lee Yeakel.

### V.     Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on November 2, 2020.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE